**Bruce BRANTON, Plaintiff—Appellant,**

v.

**WESTERN RESERVE LIFE ASSURANCE CO. OF OHIO, Defendant—Appellee.**

No. 01–16535.

D.C. No. CV–99–02101–SMM.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 11, 2002.

Decided July 1, 2002.

Before LAY,* FERGUSON and TALLMAN, Circuit Judges.

## MEMORANDUM **

Bruce Branton (Branton) appeals the district court's award of summary judgment to defendant Western Reserve Life (WRL) in this case concerning life insurance benefits. We have jurisdiction under 28 U.S.C. § 1291 and we affirm.

Because the parties are familiar with the facts, we do not recite them here. We review awards of summary judgment de novo, *see Clicks Billiards, Inc. v. Sixshooters Inc.*, 251 F.3d 1252, 1257 (9th Cir. 2001), and apply Arizona substantive law in this diversity suit. *See Martinez v. Asarco, Inc.*, 918 F.2d 1467, 1471 (9th Cir. 1990).

### I

■ While we note that the conditional receipt in question bears a substantial similarity to the one held to be "illusory, unconscionable, and against public policy" in *Anderson v. Country Life Insurance Company*, 180 Ariz. 625, 886 P.2d 1381, 1383 (Ariz.Ct.App.1994), we need not determine whether the conditional receipt was an "approval" type or "insurable risk" type and whether Tammy Branton (Tammy) was conditionally covered during the 60 days following her first premium payment. Even if Tammy reasonably believed herself to be conditionally covered for 60 days, the conditional receipt stated it was to end "automatically, without notice, on the... beginning of the 60th day following the date of this receipt."

Tammy wrote a check for the first premium on February 2, 1998. She died suddenly and unexpectedly more than 60 days later on April 23, without having undergone a medical examination. Thus, whatever Tammy's expectations were during the 60–day conditional period, she was not covered at the time of her death.[1]

■ Branton relies on WRL's failure to return Tammy's premium to contend that coverage could have continued until the time of Tammy's death. *See Continental Life & Accident Co. v. Songer*, 124 Ariz. 294, 603 P.2d 921, 930 n. 8 (Ariz.Ct.App. 1979) (stating that "retention of the application and premium payment for an unreasonable and unwarranted length of time may raise an inference of acceptance") (citation omitted).

WRL's failure to return Tammy's premium is insufficient to constitute acceptance in this case. This was not a health insurance policy but a life insurance policy, so Tammy was not denied treatment or benefits while awaiting approval. And even though WRL kept Tammy's premium until November 13, any expectation of coverage Tammy had died with her on April 23. *See* 12A John Alan Appleman & Jean Appleman, INSURANCE LAW AND PRACTICE § 7218, at 131–32 ("After the applicant has died, no conduct of the insurer thereafter can prejudice the beneficiary, or the deceased, so as to raise an estoppel from such subsequent acts.").

### II

■ Every contract contains an implied duty of good faith and fair dealing, *see*

---

\* Honorable Donald P. Lay, Senior United States Circuit Judge for the Eighth Circuit, sitting by designation.

** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as may be provided by Ninth Circuit Rule 36–3.

1. This result is consistent with *Anderson*. *See* 886 P.2d at 1391 ("If... the insurer wishes to enjoy the substantial benefits it receives by taking the applicant's cash in advance, it must return what the applicant reasonably expects the insurer is selling: immediate-*albeit perhaps only temporary*-coverage.") (emphasis added).

*Rawlings v. Apodaca*, 151 Ariz. 149, 726 P.2d 565, 569 (Ariz.1986), but one cannot demand good faith and fair dealing absent a contract. *See Norman v. State Farm Mut. Auto. Ins. Co.*, 201 Ariz. 196, 33 P.3d 530, 537 (Ariz.Ct.App.2001).

█ Even assuming a valid contact existed during the conditional period, WRL acted in good faith and dealt fairly with Tammy. WRL made a genuine effort to arrange for Tammy's required medical examination. Portamedic called Tammy six times and sent her a postcard to remind her to undergo the exam; Tammy simply failed to return the calls or schedule the appointment. WRL did not have a duty to process Tammy's application and to provide her with a policy where she failed to supply the medical specimens necessary for WRL to evaluate her application.

Branton appears to presume that fair dealing means WRL would have approved Tammy's application even without a medical examination because it knew she was a young non-smoker and the company had access to her medical records. But to hold as such would effectively eliminate the medical exam requirement from life insurance policies.

Branton relies on *Hill v. Chubb*, 182 Ariz. 158, 894 P.2d 701, 707 (Ariz.1995), but in that case, the application contained the following clause: "The [applicant] will be informed if the application has been accepted within 60 days or be given the reason for the delay." *Id.* at 703. Here, WRL made no such promise. In fact, the conditional receipt placed the burden squarely on Tammy by stating: "If you do not receive a policy or refund of the amount you paid within 60 days from the date of this receipt, please notify [WRL]."

Thus, even if we assume there was a contract during the conditional period, we hold that WRL acted in good faith and dealt fairly with Tammy.

III

█ Punitive damages are awarded only upon a showing of a defendant's "evil mind" by clear and convincing evidence. *Linthicum v. Nationwide Life Ins. Co.*, 150 Ariz. 326, 723 P.2d 675, 680 (Ariz. 1986).

There is no evidence that WRL acted with evil mind. It attempted to have Tammy undergo a medical exam; she chose not to do it. Even if WRL acted improperly in not promptly returning the premium, this does not indicate an evil mind where the company had no duty to pay the claim but was conducting an investigation into it.

We affirm the district court. Each party shall bear its own costs on appeal.

AFFIRMED.